**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DISTRICT**

JULIA BOSS                                                                                         PLAINTIFF

VS.                              NO. 04-06-CV-00001664-BSM

ARKANSAS CHILDREN'S HOSPITAL                                              DEFENDANT

SUMMARY JUDGMENT

Before the court is the motion for summary judgment of the defendant, Arkansas Children's Hospital, [Doc. #23] and the response of the plaintiff, Julia Boss [Doc. #27]. The motion for summary judgment is well-taken and, for the reasons set forth below, is granted.

*I. BACKGROUND*

Julia Boss was hired as a patient care technician in the cardiovascular intensive care unit ("CVICU") at Arkansas Children's Hospital ("ACH") on June 6, 2003. Among the duties assigned to her was the job of ordering supplies. She attended orientation soon-after she was hired. During orientation, she was instructed on, and given a copy of, ACH's attendance policy.

As provided in its attendance policy, ACH recognizes three types of absences by its employees. First are scheduled absences, which are absences that are approved either verbally or in writing by a supervisor. An employee must provide at least twenty-four hours advanced notice to receive a scheduled absence. Second are unscheduled absences, which are absences in which an employee fails to provide twenty-four hours advanced notice. Unscheduled absences normally occur when an employee has an unexpected illness. In these cases, the employee will notify the supervisor that he or she will be absent from work and will usually provide a doctor's note or excuse when the employee returns to work. Third are unauthorized absences, which are absences in which the employee fails to provide any type of notification to the supervisor before failing to report to work.

ACH's attendance policy prescribes specific corrective measures for unscheduled absences occurring during a twelve month period. The policy, which refers to each unscheduled absence as an "occurrence,"[1] is silent as to the required corrective action for the first four occurrences. The policy, however, provides for "informal verbal counseling" for a fifth occurrence; "first level written counseling" for a sixth occurrence; "second level written counseling" for a seventh occurrence; "third level written counseling and/or suspension" for an eighth occurrence; and "further disciplinary action up to and including termination" for a ninth occurrence.

The attendance policy provides an exception for absences protected by the Family Medical Leave Act (FMLA). Pursuant to this exception, absences protected by the FMLA, including unscheduled absences, will not count against the employee. To claim FMLA protection, an employee must fill out an FMLA request form and provide certification from a healthcare provider within a reasonable amount of time after requesting leave. The healthcare provider certification must address each of the absences for which FMLA protection is requested.

Ms. Boss had numerous occurrences. She was neither disciplined, reprimanded, nor counseled for the following occurrences: May 3-5, 2005; October 12 and 13, 2005; November 9-11, 2005; December 7-9, 2005; January 6-9, 2006; and February 6, 2006. She had another occurrence on March 9 and 10, 2006, for which she received informal verbal counseling. Ms. Boss had another occurrence on March 30, 2006, for which she received first level written counseling. Ms. Boss had another occurrence on April 6 and 7, 2006. After this occurrence, Ms. Boss's supervisor, Karyn Haynes, met with Ms. Boss and informed her that she might qualify for Intermittent Medical Leave

---

[1] ACH's attendance policy does not define the term "occurrence." The record indicates that ACH treated each period of continuous absence as one occurrence.

under the FMLA. Haynes instructed Ms. Boss to obtain an FMLA packet from ACH's employee health department, to have her physician fill it out, and to return it to ACH.

On May 19, 2006, Ms. Boss was written up for failing to order supplies. The written report indicates that she failed to order supplies on March 20, 2006, March 23, 2006, April 3, 2006, April 17, 2006, April 24, 2006, and May 1, 2006.

Ms. Boss had another occurrence on May 29 and 30, 2006, after which she received third level written counseling. Approximately one week later, on June 5 and 6, 2006, Ms. Boss had another occurrence. ACH terminated Ms. Boss on June 9, 2006, citing excessive absences and poor work performance. That same day, Ms. Boss was informed that she would have surgery on June 16, 2006 to treat an on-going gynecological condition.

On June 12, 2006, Ms. Boss filed a grievance with ACH's human resources department. Attached to her grievance was a completed FMLA healthcare provider's certification. This is the form that Haynes instructed Ms. Boss to submit when they met following Ms. Boss's April 6 and 7, 2006 occurrence. The certification was completed by Ms. Boss's physician, who wrote that Ms. Boss would undergo surgery on June 16, 2006, and that she needed to be off work for six weeks following surgery. The certification did not address Ms. Boss's prior unscheduled absences.

## II. THE ALLEGATIONS AND THE EVIDENCE

Ms. Boss's alleges that she was terminated because she is black. Recognizing that she was absent from work on the occasions set forth above, she asserts that she had white co-workers who also missed a number of days but who were not terminated. In support of this contention, she testified via deposition that Misty Brown, Brenda Johnson and Deanna Everett, all of whom are white, missed numerous days of work but that neither of them was terminated. She also testified that

a white male RN with the last name of Travis "was allowed to walk off the unit and leave patients." Ms. Boss admits that she lacks any records or notes showing how many absences these employees had. She also admits that she does not know why the employees missed work or if their absences were protected by the FMLA.

In addition to alleging that other similarly-situated white employees were not terminated, Ms. Boss testified that she believes her supervisor, Karyn Haynes, would make a racially motivated employment decision. Her belief regarding Haynes is based upon the fact that she tried to talk to Haynes but that Haynes would not take the time to listen to her. Ms. Boss testified that she is unaware of any other black employees in the CVICU who have been terminated for excessive absences.

The affidavit of Rhonda Langrell is the only evidence in the record specifically addressing the number of days missed by the white employees or the disciplinary action received by the white employees identified by Ms. Boss. Langrell testified that she is the Director of Employee Relations at ACH and that her testimony was based on personal knowledge. She further testified that Misty Brown received a level I warning on October 4, 2007 and a level II warning on November 6, 2007. Since that time, Misty Brown has had no further absences. Langrell testified that although there was not an employee named Brenda Johnson working in the CVICU, there was an employee named Brandi Johnson. She stated that Brandi Johnson received a level I warning on November 28, 2005, a level II warning on December 22, 2005 and a level III warning on February 22, 2006. Langrell further testified that Brandi Johnson had no other occurrences between February 22 and the time her level I warning expired in November 2006. Langrell testified that while there was no one named Deanna Everett working in the CVICU, there was someone named Deanna Edwards working there.

Langrell stated that Deanna Edwards was not subjected to any discipline because there were no records indicating that she had five or more absences. Finally, Langrell testified that no one named Travis worked in the CVICU; however, there was a male nurse named Trev Ragan. She stated that in 2007, Trev Ragan received permission by his supervisor to leave during the middle of his shift; however, permission was granted only after coverage for his shift was arranged. Langrell testified that there is no record of Trev Ragan having excessive unscheduled absences.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact. *Yarborough v. Devilbiss Air Power, Inc.*, 321 F.3d 728 (8th Cir. 2003). When a motion for summary judgment is made, the nonmoving party must do more than rely on allegations or denials in the pleadings, and the elements of its prima facie case must be supported by specific facts sufficient to raise a genuine issue for trial. *Skare v. Extendicare Health Servs., Inc.*, 515 F.3d 836 (8th Cir. 2008). A genuine issue of fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092 (8th Cir. 2007); *Patel v. United States Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008). Furthermore, to constitute a material fact, the factual issue must potentially affect the outcome of the suit under the governing law. *Depositors Ins. Co.,* 506 F.3d 1092; *see also Holloway v. Pigman*, 884 F.2d 365 (8th Cir. 1989).

### IV.  DISCUSSION

A.  <u>Plaintiff's Title VII</u>

Ms. Boss brings her racial discrimination complaint pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. In race discrimination cases, a plaintiff may survive a defendant's motion for summary judgment by putting on admissible evidence that either directly indicates unlawful discrimination or by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Fields v. Shelter Mut. Ins. Co.*, __ F.3d __ (8th Cir. 2008); *King v. Hardesty*, 517 F.3d 1049 (8th Cir. 2008). Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision. *Fields*, __ F.3d __. The direct evidence must be sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Id*. Ms. Boss has provided no direct evidence of unlawful discrimination. For this reason, she was required to establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework.

Pursuant to *McDonnell Douglas*, Ms. Boss was required to show that: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *Id*; *Shanklin v. Fitzgerald*, 397 F.3d 596 (8th Cir. 2005). If Ms. Boss had established a prima facie case, ACH would have been required to provide a legitimate, non-discriminatory, reason for the adverse employment action. *See Shanklin*, 397 F.3d 596. Finally, if ACH would have met its burden of production by providing a legitimate, non-discriminatory, reason for its action, the burden would have shifted back to Ms. Boss to show that the non-discriminatory reason articulated by ACH was a pretext for discrimination. *See id*.

Ms. Boss failed to establish a prima facie case of discrimination. Although she is a member of a protected class who suffered an adverse employment action, there is nothing in the record

showing that she was meeting ACH's legitimate job expectations and that other similarly situated employees outside the protected class were treated differently. Although Ms. Boss argued that she was meeting ACH's job expectations and that other white employees were treated differently, the record is devoid of any proof supporting these allegations. Indeed, ACH's proof is not only undisputed, it is the only proof in the record. Consequently, all the court has before it is Ms. Boss's bald allegations of unequal treatment, and she cannot rely on unsupported self-serving allegations to establish the existence of a genuine issue of material fact. *See Smith v. Int'l Paper Co.*, ___ F.3d ___ (8th Cir. April 4, 2008). She was required to substantiate her allegations with sufficient probative evidence that would permit a finding in her favor. *Id*. This, she has simply failed to do. For these reasons, there are no genuine issues of material fact in dispute regarding Ms. Boss's Title VII claim and summary judgment is therefore granted.

B.    Plaintiff's Family and Medical Leave Act Claim

It is somewhat unclear from the complaint and subsequent filings whether Ms. Boss intended to set forth a claim under the FMLA. 29 U.S.C. §2601 *et seq.* The court, however, specifically finds that she failed to establish an FMLA claim. The FMLA allows eligible employees to take up to twelve workweeks of leave during any twelve month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). To be protected by the FMLA, an employee must notify the employee's employer of the employee's intention to take leave. *Sanders v. May Dep't Stores, Inc.*, 315 F.3d 940 (8th Cir. 2003). At a minimum, an employee must give at least verbal notice sufficient to make the employer aware that the employee needs FMLA qualifying leave. *Id*. While the employee does not have to mention the FMLA by name, the employee has an affirmative duty to indicate both the need

and the reason for the leave. *Id*; *see Thorson v. Gemini, Inc.*, 205 F.3d 370 (8th Cir. 2000). The employer is permitted to require an employee who might be qualified to receive FMLA leave to provide a certification issued by the employee's health care provider, detailing such information as the diagnosis and the date and duration of the condition. *Thorson*, 205 F.3d 370.

Following her April 6 and 7, 2007 occurrence, Ms. Boss was instructed by her supervisor to obtain an FMLA packet, which included a health-care provider certification form. In completing the certification, Ms. Boss's physician was to address each of the occurrences for which Ms. Boss claimed FMLA protection. Not only did Ms. Boss return the certification form after she had been terminated, but the certification failed to address any Ms. Boss's prior absences. For these reasons, there are no genuine issues of material fact in dispute regarding Ms. Boss's FMLA claim and summary judgment is therefore granted.

## *V. DISPOSITION*

Ms. Boss has failed to offer any evidence supporting her claims against ACH and there are no genuine issues of material fact in dispute regarding her claims. Given the record, the court finds that a reasonable jury would not return a verdict in Ms. Boss's favor. Therefore, ACH's motion for summary judgment is granted, all remaining motions are dismissed, and the entire case is dismissed with prejudice.

Entered this 7th day of May, 2008.

_____
Brian S. Miller
United States District Court Judge